UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KASIE MAE VOGT,<br><br>Defendant. | 4:19-CR-40003-05-KES<br><br><br>ORDER DENYING MOTION<br>FOR COMPASSIONATE RELEASE |

Defendant, Kasie Mae Vogt, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 303. Plaintiff, the United States of America, opposes the motion. Docket 329. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

On July 2, 2019, Vogt pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 145, 152. On September 23, 2019, the court sentenced Vogt to 120 months in custody and five years of supervised release. Docket 207; Docket 210 at 2-3. On September 2, 2020, the court reduced Vogt's sentence to 60 months in custody followed by five years of supervised release. Docket 294 at 2-3.

Vogt is incarcerated at Federal Correctional Institution Pekin (FCI Pekin), a medium security facility with an adjacent minimum-security camp, in Pekin, Illinois. Docket 303 at 1. The total population at FCI Pekin is 1,139 persons. Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/pek/ (last visited Feb. 1, 2021). As of February 3, 2021, there are

currently 14 active COVID-19 cases among FCI Pekin's inmates and staff, 0 deaths from COVID-19, and 861 inmates and staff have recovered from COVID-19. *See BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Feb. 3, 2021).

Vogt is 32 years old. Docket 316 at 29. As of March 26, 2020, Vogt was 179 pounds and 67 inches tall. *Id.* at 40, 110-11. Based on her weight and height, her body mass index (BMI) is 28. *See Adult BMI Calculator*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited on Feb. 1, 2021). Vogt alleges she suffers from obesity and various mental health conditions. Docket 303 at 1; Docket 318 at 1. She further asserts that her participation in numerous mental and behavioral health classes, a drug education course, and ACE classes demonstrates she is a good candidate for release. Docket 303 at 4, 7; Docket 316 at 28. Vogt states that, "[s]he has put forth the real and tangible effort to make a positive change so that when she returns to society[,] she can be a productive member and an asset to her family and community." Docket 303 at 7.

On October 20, 2020 Vogt completed an Inmate Request to Staff form, requesting she be considered for compassionate release due to COVID-19. Docket 316 at 25. On November 16, 2020, the warden denied Vogt's request. *Id.* at 26. On November 16, 2020, Vogt filed a pro se motion with the court for relief under the First Step Act. Docket 303. Vogt's counsel subsequently filed a supplement to her pro se motion. Docket 318.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the safety of others." USSG § 1B1.13(1)-(2) (Nov. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Vogt argues that the global COVID-19 crisis along with her health conditions satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 303 at 1; Docket 318 at 3-5, 7-11.

I. **Administrative Exhaustion**

Previously, only the BOP Director had the authority to bring a

compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Vogt submitted a request for compassionate release due to COVID-19. Docket 316 at 25. The warden denied the request on November 16, 2020. *Id.* at 26. Having presented her request to the warden and being denied, and hearing no objection from the United States, the court will presume Vogt has satisfied the administrative exhaustion requirement and review the matter on the merits.[1]

## II.    Extraordinary and Compelling Reasons

Though section 3582(c)(1)(A)(i) provides for compassionate release upon a showing of "extraordinary and compelling reasons," Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to describe what should be considered extraordinary and compelling reasons and fashion "the criteria to be applied and a list of specific examples." *Id.* As directed, the Sentencing Commission did so by limiting "extraordinary and compelling reasons" to four

---

[1] The warden's response states that if Vogt is not satisfied with the decision, she may commence an appeal through the administrative remedy process within 20 days of the response. Doc. No. 316 at 26. There is no indication that Vogt appealed the decision administratively.

4

scenarios. USSG § 1B1.13, comment. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. USSG § 1B1.13, comment. n.1(D).

The Sentencing Commission's guidance in § 1B1.13 was provided prior to the passage of the FSA amending section 3582(c)(1)(A) and has not been updated because the commission lacks a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts have questioned whether the previous policy statement still applies. *See United States v. Rodd*, Criminal No. 13-230, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 4:05-CR-00227-1, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020).

Because the FSA changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon,* 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11,

5

2019); *Beck*, 425 F. Supp. 3d at 578-80; *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). A fellow court in this district has held that the "court retains its independent authority to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring[.]" *United States v. Magnuson,* 5:15-cr-50059-JLV, 2020 WL 7318109, at *5 (D.S.D. Dec. 11, 2020) (internal quotations omitted). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Loggins,* 966 F.3d 891, 892 (8th Cir. 2020) ("We need not decide whether the statute supersedes the policy statement in this respect . . . ."); *United States v. Rodd,* 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13.").

Vogt contends that the ongoing COVID-19 pandemic in combination with her health conditions satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 303 at 1; Docket 318 at 1. Vogt contends that her circumstances warrant relief under the medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the catch-all provision, U.S.S.G. § 1B1.13 comment note 1(D). Docket 318 at 3-13.

Assuming the court's discretion to consider compassionate release is at least as broad as the outdated policy statement of the Sentencing Commission, Vogt has failed to show that her reasons for release rise to the level of "extraordinary and compelling" circumstances justifying a reduction in sentence.

6

### A.     Medical Conditions Category, Note 1(A)

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) has identified the following conditions as ones that *do* pose an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, Down syndrome, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), smoking, heart conditions, sickle cell disease, and Type II diabetes. *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Dec. 29, 2020). The CDC advises that other medical conditions *may* pose an increased risk of severe illness from COVID-19, including, moderate to severe asthma, cystic fibrosis, hypertension or high blood pressure, liver disease, being overweight, type 1 diabetes, and several others. *Id.*

The court has reviewed the medical records submitted in this case. Vogt's medical conditions include stimulant related disorder, bipolar and major depressive disorder, anxiety and attention-deficit hyperactivity disorder. Docket 316 at 23; Docket 318 at 1. Although Vogt claims she suffers from obesity, based on her height and weight, her BMI is 28 which is considered overweight, not obese. Docket 316 at 40, 110-11; Docket 318 at 1; *See also Adult BMI Calculator*, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Feb. 1, 2021). Vogt's overweight condition is listed as one that *might* increase the risk of severe illness from COVID-19. This court has required a more particularized

showing of risk. Additionally, Vogt has not identified how being overweight prevents her from providing self-care in a correctional facility setting or how that condition amounts to extraordinary and compelling circumstances.

Vogt's other medical conditions—stimulant related disorder, bipolar and major depressive disorder, anxiety and ADHD—are not among those identified by the CDC as increasing or potentially increasing the risk of severe illness from COVID-19. Docket 316 at 23. Vogt is prescribed medications to treat all her medical conditions, and those conditions appear to be stable. *Id.* at 34-35. Her medical records also reflect minimal clinic visits, which leads the court to believe that Vogt is generally healthy. *Id.* at 40, 84, 86. Additionally, Vogt recently tested negative for COVID-19 and refused a vaccine when offered one. *Id.* at 14-15.

The court believes Vogt's medical conditions are appropriately managed at FCI Pekin, the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and that the facility would act to treat any inmate who does contract COVID-19. Although the court in no way diminishes Vogt's health concerns, her conditions coupled with the present conditions at FCI Pekin, do not establish extraordinary and compelling reasons justifying her early release.

### B.   Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, comment. n.1(D). Even after considering the

ongoing COVID-19 pandemic combined with Vogt's medical conditions, the court is not convinced that extraordinary and compelling reasons exists to release Vogt from custody early.

## III.   Sentencing Factors of § 3553(a)

Although the court need not consider the 3553(a) factors because Vogt's circumstances fail to meet the high bar of "extraordinary and compelling reasons" warranting a sentence reduction, such sentencing factors underscore the point.

Vogt's conviction stems from a conspiracy to distribute methamphetamine. At least 500 grams of methamphetamine were attributable to her conduct. Docket 196 ¶ 5. When apprehended for her involvement in the instant offense, 47.4 grams of methamphetamine, 22 Klonopin pills, two Vicodin pills, drug paraphernalia, and stolen items were found in her residence. *Id.* ¶ 27. She also admitted to purchasing methamphetamine from a co-conspirator when interviewed. *Id.* The total offense level was calculated as 23, and Vogt had nine scorable history points resulting in a criminal history Category IV. *Id.* ¶¶ 48, 56-57. The guideline range for her sentence was 70 to 87 months in custody; however, the offense had a mandatory minimum of 120 months incarceration. *Id.* ¶¶ 96-97. The court sentenced Vogt to the mandatory minimum of 120 months in custody. Docket 210 at 2. Later, the court reduced Vogt's sentence by half to 60 months. Docket 294.

Vogt has served approximately 46% of her statutory term. Docket 316 at 31. She is eligible for home detention on October 20, 2022. *Id.* at 30. The court commends Vogt for her participation in educational programs while in custody

9

and her spotless disciplinary record.[2] *Id.* at 27-28. To her credit, Vogt appears to be making sincere efforts to reform herself. The court encourages her continued progress. Nonetheless, after careful consideration, the court concludes Vogt's sentence of 60 months in custody with 5 years of supervised release continues to be appropriate for the seriousness of the crime to which she pleaded guilty.

## CONCLUSION

Vogt has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 303) is denied.

Dated February 3, 2021.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

---

[2] Section 994(t) directs "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 18 U.S.C. § 994(t); see also USSG § 1B1.13, comment. (n.3).